IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                          Case No. 94-10128-02-JWB

PIYARATH KAYARATH,[1]

    Defendant.

**MEMORANDUM AND ORDER**

This matter is before the court on Defendant's motion for sentence reduction pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). (Doc. 725.) The motion is fully briefed and is ripe for decision. (Docs. 726, 727.) For the reasons stated herein, Defendant's motion is DENIED IN PART and DISMISSED IN PART.

**I. Facts and Procedural History**

On January 4, 1996, Defendant and another individual were charged in two counts of a second superseding indictment. (Doc. 138.) Count One charged a Hobbs Act robbery, in violation of 18 U.S.C. § 1951 and 18 U.S.C. § 2, based on a November 8, 1994 robbery of the Mandarin Chinese Restaurant and Lounge in Wichita, Kansas. Count Two charged the unlawful carrying and use of a firearm during and in relation to the robbery and causing the death of a person through the use of the firearm, which killing was a murder, in violation of 18 U.S.C. § 924(j)(1)[2] and 18

---

[1] Defendant's first name is alternatively spelled in the record as "Piyaroth." (*See e.g.,* Doc. 138 at 1.).
[2] At the time of indictment and trial, this provision was designated as § 924(i)(1). (It was one of two different subsections that were inadvertently given the same number.) It has since been redesignated as § 924(j)(1) and is referred to here by its current designation.

U.S.C. § 2, "in that the defendants, with malice aforethought, did unlawfully kill Barbara Sun by shooting her with a firearm in the perpetration of the robbery…." (Doc. 138 at 2.)

The charges against Defendant were tried to a jury. On January 1, 1997, the jury returned a verdict of guilty on both counts. (Doc. 499.) On April 15, 1997, the court sentenced Defendant to 240 months imprisonment on Count One and to life imprisonment without the possibility of release on Count Two, with the counts to run concurrently.[3] (Doc. 525.) The judgment was affirmed on direct appeal.[4] (Doc. 635.)

On June 29, 2001, Defendant filed a motion to vacate sentence pursuant to 28 U.S.C. § 2255. Although the motion included a challenge to the conviction in the instant case, it was apparently docketed in a separate case against Defendant, *United States v. Kayarath,* No. 94-10123-02-JWB (D. Kan., Doc. 152.) The motion was denied by the court on July 12, 2001. (*Id.*, Doc. 153.) Defendant then unsuccessfully sought permission from the Tenth Circuit on two separate occasions to file a second or successive § 2255 motion, but those requests were denied. (Docs. 692, 704.) A third such request, which was based on the Supreme Court's invalidation of the "residual clause" of § 924(c)(3)(B) in *United States v. Davis,* 139 S. Ct. 2319 (2019), was granted (Doc. 707), and Defendant thereafter filed another motion to vacate sentence. (Doc. 710.) This court denied the motion, however, because under Tenth Circuit law a Hobbs Act robbery is categorically considered a crime of violence under the "elements clause" of § 924(c)(3)(A), such

---

[3] The sentence was consistent with the guideline range for imprisonment, which was based on a total offense level of 43 and a criminal history category of III. Presentence Report (PSR) ¶ 79. Defendant's criminal history included a plea of guilty to four counts of a superseding indictment in Case No. 94-10123-02. Those counts charged two § 1951 offenses and two § 924(c) offenses relating to the robbery of two Sonic Drive-In restaurants. (No. 94-10123-02, Doc. 30.) Defendant was initially sentenced in December of 1995 to 330 months imprisonment in that case (*Id.*, Doc. 96), but in August of 1996 the sentence was reduced to 240 months. (*Id.*, Doc. 123.)

[4] As the Tenth Circuit noted on appeal, the evidence presented by the government showed Defendant was one of five individuals involved in the robbery (a fact he later admitted) and the gun in question belonged to Defendant. One of the other individuals used the gun to kill Mrs. Sun when she could not open a restaurant safe. (Doc. 635 at 3-4.)

that Defendant's conviction was not based on the invalid residual clause. (Doc. 715.) Defendant appealed that ruling, but on July 30, 2020, the Tenth Circuit dismissed the appeal. (Doc. 722.)

On May 10, 2021, Defendant filed the instant motion for reduction of sentence, which argues that the "the high risk of serious illness or death … that COVID-19 poses to him … is an extraordinary and compelling circumstance that warrants a reduction in this case." (Doc. 725 at 2.) Defendant further contends his "exemplary rehabilitation, length of time incarcerated, and the uncertainty of whether the jury … unanimously selected § 924(c) or § 924(j) for Count Two conviction points in favor of compassionate release" and warrants a reduction in sentence to time served. (*Id.*) Alternatively, Defendant argues a reduction to a sentence of 30 years would be appropriate. (Doc. 727 at 19.) In response, the government asserts that Defendant has failed to show extraordinary and compelling reasons for a reduction. Moreover, it argues the factors in § 3553(a) weigh heavily against a reduction. (Doc. 726 at 13.) Finally, insofar as Defendant's motion challenges jury instructions or constitutional aspects of his conviction, the government argues the motion is a successive § 2255 that must be dismissed for lack of jurisdiction. (*Id.* at 16.)

**II. Legal Standards**

"Federal courts are forbidden, as a general matter, to modify a term of imprisonment once it has been imposed, but [that] rule of finality is subject to a few narrow exceptions." *United States v. McGee,* 992 F.3d 1035, 1041 (10th Cir. 2021) (quoting *Freeman v. United States,* 564 U.S. 522, 526 (2011)). One exception is found in the "compassionate release" provision of 18 U.S.C. § 3582(c)(1)(A). Prior to 2018, that section only authorized the Director of the Bureau of Prisons to move for a sentence reduction. *McGee,* 992 F.3d at 1041. The First Step Act changed this to allow a defendant to file his own motion for reduction if certain conditions are met. *Id.*

The Tenth Circuit recently endorsed a three-step test for deciding motions under § 3582(c)(1)(A). *Id.* at 1042 (citing *United States v. Jones*, 980 F.3d 1098, 1107 (6th Cir. 2020)). If a defendant has administratively exhausted his claim,[5] the court may reduce a sentence if three requirements are met: (1) "extraordinary and compelling" reasons warrant a reduction; (2) the "reduction is consistent with applicable policy statements issued by the Sentencing Commission;" and (3) the reduction is consistent with any applicable factors set forth in 18 U.S.C. § 3553(a). *Id.* A court may deny the motion when any requirement is lacking and the court need not address the other requirements. *Id.* at 1043. But all the requirements must be addressed when the court grants a motion for release under the statute. *Id.*

The Tenth Circuit has held that the court has independent discretion to determine whether a defendant has shown "extraordinary and compelling reasons" that warrant a reduction. *See McGee*, 992 F.3d at 1044, 1048. "[E]xtraordinary" means "exceptional to a very marked extent." *United States v. Ford*, No. CR 10-20129-07-KHV, 2021 WL 1721054, at *3 (D. Kan. Apr. 30, 2021) (quoting *United States v. Baydoun*, No. 16-20057, 2020 WL 4282189, at *2 (E.D. Mich. July 27, 2020) (quoting extraordinary, Webster's Third International Dictionary, Unabridged (2020)). Although not binding on this court, the Sentencing Commission has recognized that grounds for release due to extraordinary and compelling reasons can include a (1) defendant's medical condition; (2) age; (3) family circumstances; and (4) a catchall category of an "extraordinary and compelling reason other than, or in combination with," the first three categories. *Id.* (citing U.S.S.G. § 1B1.13, Reduction In Term Of Imprisonment Under 18 U.S.C. § 3582(c)(1)(A) (Policy Statement), cmt. n.1 (Nov. 2018)) and *United States v. Carr*, No. 20-1152, ___F. App'x. ___, 2021 WL 1400705, at *4 (10th Cir. Apr. 14, 2021) (district court has discretion

---

[5] The government concedes Defendant has exhausted his administrative remedies on the motion. (Doc. 726 at 5.)

to consider definition of extraordinary and compelling reasons in Section 1B1.13 application notes).

With respect to the second requirement (whether a reduction is consistent with applicable policy statements), the Tenth Circuit has held that the current Sentencing Commission policy statement on extraordinary circumstances does not constrain a court's discretion to determine whether circumstances are extraordinary and compelling because that provision applies only to motions filed by the Director of the BOP, not to motions filed by a defendant. *United States v. Maumau*, 993 F.3d 821, 837 (10th Cir. 2021).

Defendant bears the burden of establishing that compassionate release is warranted under the statute. *See, e.g., United States v. Dial*, No. 17-20068-JAR, 2020 WL 4933537 (D. Kan. Aug. 24, 2020); *United States v. Dixon*, No. 18-10027-02-JWB, 2020 WL 6483152, at *2 (D. Kan. Nov. 4, 2020).

**III. Analysis**

A. <u>Extraordinary and Compelling Reasons</u>.

The court finds the allegations in Defendant's motion fail to show extraordinary and compelling reasons for a sentence reduction. Defendant relies primarily on the alleged danger he faces of suffering serious illness or death from COVID-19. But the motion fails to show he faces a health risk significantly greater than the risk faced by persons who are not incarcerated. Defendant is currently housed at USP Atwater in California. His motion alleges that BOP "reports 122 active COVID-19 cases among inmates and eight staff cases at USP Atwater." (*See* Doc. 725 at 8.) But the numbers he cites were from January 5, 2021. BOP has now undertaken "extensive and professional efforts to curtail the virus's spread." *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020). According to BOP's website, USP Atwater currently reports zero inmate cases

and two staff cases of COVID-19. *See* https://www.bop.gov/coronavirus/ (last accessed June 24, 2021). In fact, out of the 129,200 federal inmates incarcerated at this time, only 71 inmates nationwide currently have confirmed positive test results. *Id.* Moreover, as Defendant concedes, he has now received the COVID-19 vaccine and to the best of his knowledge he has no serious health conditions that would put him at a heightened or imminent risk of serious illness or death if he were to contract COVID-19. (Doc. 727 at 4.) Defendant is currently 45 years old. Under the circumstances, Defendant has failed to show any health-related extraordinary or compelling reasons for a sentence reduction. *See United States v. Verdin-Garcia*, No. 05-20017-01-JWL, 2021 WL 2144801, at *2 (D. Kan. May 26, 2021) (no inmates with active infections weighs against compassionate release); *United States v. Young*, No. CR 10-20076-01-KHV, 2021 WL 1999147, at *3 (D. Kan. May 19, 2021).

Defendant also alleges he has demonstrated "exemplary rehabilitation" that weighs in favor of compassionate release. (Doc. 725 at 2.) Defendant has clearly made efforts to take advantage of educational opportunities in prison, including obtaining his General Educational Development (GED) certificate and completing a 500-hour challenge program. (Doc. 725-2 at 3-4.) A letter of support from a psychologist also indicates Defendant made positive contributions to the challenge program in which he participated. (Doc. 725-3.) A report dated February 10, 2021 indicates Defendant has been free of any disciplinary incidents since June 2013. (Doc. 725-2 at 3.) These efforts are commendable and show Defendant has made a significant effort to better himself. Even so, the court is not persuaded that these efforts, alone or in combination with the other circumstances alleged by Defendant, amount to extraordinary and compelling reasons that warrant a reduction in Defendant's sentence. Prisoners are expected to follow institutional rules, and taking advantage of educational opportunities provided in prison as Defendant has done is

commendable, but it is not itself a compelling reason for a sentence reduction. *Cf. United States v. Harris,* 505 F. Supp. 3d 1152, 2020 WL 7122430, *11 (D. Kan. Dec. 4, 2020) (defendant's "admirable commitment to education and personal growth while incarcerated" was not a basis for sentence reduction).

Defendant also asserts that his young age at the time of the offenses (age 18) and the long term he has now served in prison (over 26 years) constitute extraordinary and compelling reasons for a sentence reduction. These are legitimate factors to consider, as a life sentence for crimes committed by an 18-year-old is, outside of the death penalty, the most severe and punitive sentence that can be imposed. At the same time, it must be recognized that the sentence resulted from the sentencing judge's consideration of the particular facts of the case, and was a sentence contemplated both by the governing law and the federal sentencing guidelines. Defendant also points out that although his sentence of life imprisonment was a guideline sentence, the guidelines were "mandatory" at the time and not advisory as they later became. *See United States v. Booker,* 543 U.S. 220, 245 (2005). But the same life sentence would be the applicable advisory guideline sentence for a similar offense committed today. The court is not persuaded that *Booker* or any of the other circumstances cited by Defendant warrant a sentence reduction. Ultimately, Defendant fails to meet his burden of showing that there are extraordinary and compelling reasons for a sentence reduction.

Defendant's motion also relies in part on alleged "uncertainty" as to whether the jury reached a unanimous verdict on Count Two and whether it found all the elements of a § 924(j)(1) offense. (Doc. 725 at 10-16.) The court agrees with the government, however, that insofar as the motion includes such allegations, it is properly characterized as a motion for relief under 28 U.S.C. § 2255. Regardless of how a movant characterizes a post-judgment motion, "it must be treated as

a § 2255 motion if it 'asserts or reasserts a federal basis for relief' from the movant's conviction or sentence." *United States v. Sears,* 836 F. App'x 697, 699 (10th Cir. 2020) (quoting *In re Lindsey,* 582 F.3d 1173, 1175 (10th Cir. 2009)). *See also United States v. Nelson,* 465 F.3d 1145, 1148 (10th Cir. 2006) (a § 2255 motion "is one claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States ….") Here, Defendant seeks relief from the sentence in part by claiming his conviction violated the Sixth Amendment. (*See* Doc. 725 at 13) ("the Sixth Amendment requires that every element of § 924(c) must be proved 'beyond a reasonable doubt.' The general verdict failed to give this dual-assurance of 'unanimity' and 'guilt-beyond-a-reasonable-doubt….'") *Cf. United States v. Logan,* ___F. Supp. 3d ___, 2021 WL 1221481, *9 (D. Minn. Apr. 1, 2021) (defendant is "in effect using a compassionate-release motion to bring yet another challenge to the validity of his sentence," arguing that "what is extraordinary about his situation is that he is serving an illegal sentence.") As recounted previously, Defendant already filed at least one § 2255 motion challenging his conviction, meaning this court has no jurisdiction to rule on his current allegations insofar as they claim the conviction or sentence is invalid. *See* 28 U.S.C. § 2255(h) (second or successive § 2255 motion must be certified by court of appeals); *Nelson,* 465 F.3d at 1148 (if the pleading must be treated as a § 2255, the district court does not even have jurisdiction to deny the relief sought). The court will accordingly dismiss the allegations that Defendant's conviction or sentence is constitutionally infirm. Insofar as Defendant attempts to avoid this result by suggesting the court nevertheless has discretion to consider "uncertainty" in the context of a motion for compassionate release, the court declines to give the allegations any weight. Defendant's conviction is final and

presumed valid until shown otherwise, and nothing in the current motion demonstrates any basis for reducing the sentence on account of legal uncertainty.[6]

The court has considered all of the factors asserted by Defendant in his motion, but concludes Defendant has not shown extraordinary and compelling reasons exist for a reduction in his sentence.

B.  Section 3553(a) Factors

Even if the circumstances alleged by Defendant could be considered extraordinary and compelling, the court would nevertheless deny the motion for reduction based upon a consideration of the factors in 18 U.S.C. § 3553(a).

Prior to granting a motion for compassionate release, the court must consider the sentencing factors set forth in § 3553(a). *United States v. Reece*, No. 16-20088-JAR, 2020 WL 3960436, at *2, 7 (D. Kan. July 13, 2020).  The factors include the nature of the offense and Defendant's personal history and characteristics; the need for the sentence imposed to provide reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, afford adequate deterrence to criminal conduct, protect the public from further crimes of Defendant, and provide Defendant with needed training and care; the kinds of sentences available; the need for rehabilitative services; the applicable Guideline sentence; and  the need to avoid unwarranted sentence disparities among similarly-situated defendants.  18 U.S.C. § 3553(a)(1)-(6).

---

[6] Defendant ignores or mischaracterizes jury instructions that informed the jury that their verdict "must be unanimous" (Doc. 501 at 42), and which required them either to find that Defendant committed each of the essential elements of § 924(j)(1) (Doc. 501 at 32), or that someone else committed each of the essential elements and Defendant knowingly aided and abetted them in the commission of the offense (Doc. 501 at 36-37), before it could convict Defendant on Count Two.

Defendant was sentenced to life imprisonment based on his willing participation in crimes that resulted in the death of Mrs. Barbara Sun. The nature of the offenses is shown by the following summary, which is derived from the PSR. Mrs. Sun was an immigrant to this country who dreamed with her husband of owning a restaurant. They were able to purchase a building that formerly housed a restaurant in Wichita and opened the Mandarin Chinese Restaurant and Lounge. The equipment that came with the building purchase included a combination safe, although the Suns never used it because they did not know the combination and had nothing of value to keep in it. The Suns operated the restaurant for six years; for part of that time they lived on the second floor above the restaurant. Mrs. Sun, who was 35 years old, worked as the hostess, greeting customers and seating them, while Mr. Sun was the primary cook for the restaurant. The Suns had two daughters, ages 8 and 5, both of whom were born in Wichita. The Suns' daughters often stayed at the restaurant following school and would help with chores or play on the second floor.

Defendant was one of five young men who planned the robbery of the restaurant. Several of the men were members of a street gang. They were unemployed and shared money that they obtained through robbery, burglary, and theft, often using the money to buy drugs. One of the men suggested robbing the Mandarin Restaurant because he believed the Suns maintained gold and jewelry on the premises. The restaurant foyer in fact had a glass display case in it containing jewelry, but it was only costume jewelry and was of nominal value. The robbery plan called for the occupants of the Mandarin to be gathered together and tied up, with one of the robbers guarding them, while the others would take one of the proprietors to another area and demand that they turn over money and jewelry. The men decided to take two handguns with them, a 9mm Beretta and a .32 caliber revolver. As the Tenth Circuit noted in *United States v. Kayarath,* 149 F.3d 1192

(Table), 1998 WL 327682, *2 (10th Cir. June 19, 1998), the government presented evidence at trial that the 9mm Beretta belonged to Defendant.

Late in the evening of November 8, 1994, the men drove to the restaurant in two cars, one of which was stolen earlier in the day. They saw cars in the parking lot and decided to wait until the customers were gone. They drove to a nearby mall and burglarized a car, getting into a scuffle with the car owner when he emerged from the mall. The men then drove back to the restaurant and four of them (including Defendant) entered, one wearing a mask. Mrs. Sun was seated in the restaurant lounge helping her daughters with their homework. Mr. Sun was cleaning the kitchen. Two men, including Defendant, grabbed Mr. Sun and demanded that he open the cash register. The men then ordered Mr. Sun to get on the floor near the bar and bound his hands. They also tied up a waiter and Mrs. Sun. The Suns' two daughters were not tied up but were ordered to remain with their father. Two of the men grabbed Mrs. Sun by her hair and forced her upstairs, ramming her head on the bar and wall as she struggled. Upstairs, the men demanded Mrs. Sun open the safe. She tried to explain that she did not know the combination. The two men upstairs ransacked the room looking for valuables. Defendant, who had been downstairs with the other captives, joined the two men upstairs and obtained the .32 caliber revolver from one of them before returning downstairs.

When the two men upstairs found no valuables, they began to beat Mrs. Sun with their fists and blunt objects and began kicking her. She sustained severe bruising to her head, face, neck, arms, torso, and legs. One of the men, Bountaem Chanthadara, took out the 9mm handgun and proceeded to shoot Mrs. Sun at close range five times.[7] The details of the wounds, from which

---

[7] Prosecutors sought the death penalty against Chanthadara and a district judge sentenced him to death, but the sentence was vacated on appeal. *United States v. Chanthadara,* 230 F.3d 1237 (10th Cir. 2000). On remand, Chanthadara was sentenced to life without the possibility of release. (Doc. 650.) Chanthadara died in prison in late 2019. (*See* Doc. 706.)

11

Mrs. Sun soon died, are too horrible to set forth here. While this was going on, Defendant was downstairs continuing to search for valuables. He fired the .32 caliber revolver at a cash register in an unsuccessful attempt to open it. The two men who were upstairs came down and the four men then exited the restaurant, with Chanthadara tipping over the glass jewelry case in the foyer on his way out, leaving a palm print on the glass that investigators would later find. The men drove away. They obtained a total of about $100 in the robbery.

Mr. Sun and the waiter managed to free themselves from their restraints. Mr. Sun sent his eight-year old daughter to seek help from a nearby restaurant, while he went to search upstairs for his wife. He found her lying on the floor covered in blood. Mr. Sun's daughter returned with an employee from a neighboring restaurant. The girl followed the employee upstairs and saw her mother lying, dead or dying, amongst the debris on the floor.

The need for the sentence imposed to reflect the seriousness of the offense does not weigh in favor of a sentence reduction. The offenses of which Defendant was convicted are obviously extremely serious in nature. They resulted in the brutal and senseless death of an innocent young mother who, insofar as the record shows, only tried to work hard and take care of her family. Defendant did not shoot Mrs. Sun, but he was a willful participant in the robbery and firearm offenses, and as such was legally responsible for the murder committed by his compatriot in the course of the robbery.

Defendant was himself an immigrant to the United States, having been brought here as a small child. He comes from a supportive family. Defendant was only 18 years old at the time of the offenses. Yet, Defendant's involvement in this case was not his first foray into violent offenses. One or two months before the Mandarin Restaurant robbery, Defendant participated with one or more of the same individuals in two other robberies. In the first incident, Defendant, armed with

a knife, and a co-defendant, armed with a gun, entered a restaurant. The co-defendant fired three shots as the men ordered employees to the back of the building, where the men robbed them. In the second robbery, Defendant (armed with a gun) and two of his co-defendants entered a restaurant, ordered the employees to lie down on the floor, and robbed them. The men ordered one employee, at gunpoint, to unlock the restaurant's safe, which he did, after which the men cleared out the safe and one of the co-defendants then fired a gunshot into the ceiling. Defendant entered a plea of guilty to two counts of robbery under § 1951 and two § 924(c) firearm counts stemming from these robberies. *See United States v. Kayarath,* No. 94-10123-02 (D. Kan.).

A reduction in Defendant's sentence would not, in the court's estimation, reflect the seriousness of the offense or promote respect for the law. Nor would it serve to deter criminal conduct or protect the public from further crimes of Defendant. Defendant received a severe sentence for his offenses, but it was a sentence authorized by law and commensurate with the harm caused by the offenses. As the Tenth Circuit noted in affirming the judgment against Defendant, this is a tragic case, in part because of Defendant's young age at the time, but primarily because the crimes Defendant and his co-defendants committed "were violent and unprovoked, and decimated the Sun family." *Kayarath,* 1998 WL 327682, *5.

The court finds that the imposed sentence remains sufficient, but not greater than necessary, to meet the sentencing factors in § 3553(a) and punish the offense.

**IV. Conclusion**

Defendant's motion to reduce sentence (Doc. 725) is DENIED IN PART and DISMISSED IN PART. The motion is DISMISSED for lack of jurisdiction insofar as it alleges that Defendant's conviction or sentence is invalid; such allegations constitute a second or consecutive § 2255 motion over which this court has no jurisdiction. 28 U.S.C. § 2255(h). The court further denies a

certificate of appealability with respect to those allegations.  *See* 28 U.S.C. § 2253(c)(2).  The motion is otherwise DENIED on the merits.

    IT IS SO ORDERED this 25th day of June, 2021.

                                                  s/ John W. Broomes
                                                  JOHN W. BROOMES
                                                  UNITED STATES DISTRICT JUDGE